1   Troy Brimm
    1130 Eleventh Street #7
2   Modesto CA 95354
    (209) 576-0448
3



4                                           MAY 2 5 2007

5                                   CLERK, U.S. DISTRICT COURT
                                    EASTERN DISTRICT OF CALIFORNIA
                                    BY_____ C℮._____
6                                            DEPUTY CLERK

7

8               IN THE UNITED STATES DISTRICT COURT FOR

9               THE EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,

12          Respondent,                      Case Nos. CR-96-5180-OWW
                                                       CR-99-5342-OWW
13
            vs.
14
    TROY DOUGLAS BRIMM,                      MOTION TO CLARIFY,
15                                           MODIFY, OR RESCIND
            Petitioner.                      SPECIAL CONDITIONS OF
16                                           SUPERVISED RELEASE

17

18      The petitioner is requesting this motion be heard on June 11, 2007, to clarify, modify,

19  or rescind certain conditions of his supervised release, because:

20      a)  They are punitive occupational restrictions, which impose unusual, unnecessary,

21          and severe financial hardship, and that do not comport with sentencing guidelines'

22          provisions governing occupational restrictions;

23      b)  They give the probation officer improper judicial discretion;

- 1 -

1      c)  They are not reasonably necessary to protect the public; or

2      d)  The actions of the probation officer do not coincide with the plain language of the

3          condition.

4

5

6

7  **AUTHORITY**

8

9        The plain language of 18 U.S.C. § 3583(e)(2) [Appx B, #1] allows a court, at any

10  point before the term of supervised release has expired, to modify the conditions of

11  release. Aside from the limitation that a court cannot modify the conditions of release

12  after the expiration or termination of the term, no restriction in § 3583(e)(2) curbs the

13  authority of the court to modify the conditions of release.  See *U.S. v. Allen, 2 F.3d 538*

14  *(4ᵗʰ Cir.1993)* [Appx A, #1].

15

16

17  **ARGUMENT**

18

19        A special condition is not an "explicit" or "mandatory" condition of supervised

20  release as defined in 18 U.S.C. § 3583(d) [Appx B, #2].  Thus, it is "discretionary" under

21  18 U.S.C. § 3563(b) [Appx B, #3], and subject to the criteria set forth in 18 U.S.C. §

22  3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D) [Appx B, #4].  Since it is discretionary, the

23

Court must place into the record the reason for imposing it, see *U.S. v. Loy 191 F.3d 360 (3rd Cir.1999)* [Appx A, #2].

A. Computer-related restrictions.

The computer-related special conditions have gone through several permutations over the course of time.  In the case 96-CR-5180-OWW, on January 21, 1997, the court imposed no restrictions regarding the use of a computer.  [Ex 1]  Then, in an amended judgment dated February 5, 1997, the court imposed the following special conditions regarding the use of a computer [Ex 2]:

> **8) The defendant shall not use a computer in any way to access sexual implicit material.**

> **10) The defendant shall limit his computer use to that which is essential to employment.  The Court will consider allowing the defendant access to a computer if the defendant can prove to the Court, through, the United States probation officer, that there is some type of blocking services available.**

The conditions remained unchanged on a judgment imposed September 27, 1999, for a violation of supervised release.  [Ex 3]

In the case 99-CR-5342-OWW, on February 7, 2000, the Court imposed the following special conditions regarding the use of a computer [Ex 4]:

> **4. The defendant may use a computer for employment purposes, however he is not to access any on-line sites which contain pornographic material or any illegal material.  Such access may be monitored by the probation officer.  Nothing in this order shall be construed as to prohibit the defendant from using a credit card.**

> **7. The defendant shall refrain from accessing via computer any "material' that relates to the activity in which he was engaged in committing the instant offense, namely access to pornography of children or others.**

-3-

**9. The defendant shall not possess or use a computer that contains an internal modem and/or possess an external modem.**

On June 13, 2005, in the case 96-CR-5180-OWW, the Court entered a judgment for a violation of supervised release, and stipulated that supervised release was to "continue under same conditions of supervision heretofore ordered on January 21, 1997." [Ex 5]

The judgment rendered on that day had no specific computer restrictions; however, it would be reasonable to assume that the Court was referring to the amended judgment entered on February 5, 1997.

Furthermore, on June 13, 2005, in the case 99-CR-5342-OWW, the Court rendered a judgment for a violation of supervised release, and stipulated that supervised release was to "continue under same conditions of supervision heretofore ordered on February 7, 2000." [Ex 6]

In the most recent judgment, the special conditions were consolidated into the current condition [Ex 7]:

**3. The defendant shall not possess or use a computer or any other device that has access to any "on-line computer service." This includes any Internet service provider, bulletin board system, or any other public or private computer network, except for use with his employment and after the approval of the probation officer.**

The petitioner is now awaiting a hearing for allegedly violating this condition. Specifically, that he used a computer at his employer's office without approval from the probation officer.   This is the same employer and the same computer he used with his probation officer's approval before his violation.  [Ex 8]

Now, due to the petitioner's "violation status," the probation officer is refusing to grant the petitioner permission to work at any client's location, creating an occupational

-4-

1   restriction that has left the petitioner completely un-employable, and destitute.

2   Furthermore, the probation officer has denied the petitioner's request that he have

3   Internet access at his home office, leaving him unable to work at home, in addition to

4   working at his client's locations.

5

6   1. The special condition is an occupational restriction.

7

8   As a "special" condition of supervised release, the U.S. Sentencing Guidelines

9   authorize the sentencing court to impose an occupational restriction at its discretion.

10  *U.S.S.G. §§ 5F1.5* [Appx B, #5] *& 5B1.4(b)(22), 18 U.S.C. § 3563(b)* [Appx B, #3].

11  U.S.S.G. § 5F1.5 provides as follows:

12  Occupational Restriction

13  (a) The court may impose a condition of probation or supervised release prohibiting the
    defendant from engaging in a specified occupation, business, or profession, or limiting
14  the terms on which the defendant may do so, only if it determines that:
       (1) a reasonably direct relationship existed between the defendant's occupation,
15  business, or profession and the conduct relevant to the offense of conviction; and
       (2) imposition of such a restriction is reasonably necessary to protect the public
16  because there is reason to believe that, absent such restriction, the defendant will
    continue to engage in unlawful conduct similar to that for which the defendant
17  was convicted.
    (b) If the court decides to impose a condition of probation or supervised release
18  restricting a defendant's engagement in a specified occupation, business, or profession,
    the court shall impose the condition for the minimum time and to the minimum extent
19  necessary to protect the public. *Federal Sentencing Guidelines, § 5F1.5., emphasis
    added.*
20

21  In order for the court to impose an occupational restriction, a two-prong test of

22  applicability must be met. Specifically, that a reasonably direct relationship exists

23

-5-

between the petitioner's occupation and his offense conduct, and that an occupational

restriction is necessary to prevent further unlawful conduct.

"Section 5F1.1 limits the scope of the occupational restriction to the minimum reasonably necessary to protect the public. The Senate Judiciary Committee Report on the Comprehensive Crime Control Act explains that the occupational restriction provision was 'intended to be used to preclude the continuation or repetition of illegal activities while avoiding a bar from employment that exceeds that needed to achieve that result.' Commentary to § 5F1.5 (citing S.Rep. No. 225, 98th Cong., 1st Sess. 96-97). The condition 'should not be used as a means of punishing the convicted person.' Id.", *U.S. v. Mills, 959 F.2d 516 (5th Cir.1992)* [Appx A, #3].

"Only if the court determines that the defendant's occupation is related to the offense of conviction can occupational restrictions be imposed. See United States v. Erwin, 299 F.3d 1230, 1232-33 (10th Cir.2002) [Appx A, #4]; United States v. Peterson, 248 F.3d 79, 85-86 (2d Cir.2001) [Appx A, #5]; United States v. Clark, 195 F.3d 446, 452 (9th Cir.1999). If the court decides to impose an occupational restriction, it can only impose the restriction 'for the minimum time and to the minimum extent necessary to protect the public.', U.S.S.G. § 5F1.1(b).", *U.S. v. Britt, 332 F.3d 1229 (9th Cir.2003)* [Appx A, #6].

The petitioner suggests that there is no relationship whatsoever between his

occupation as a computer consultant and receiving illegal pornography. The petitioner is

not in the pornography business, nor has he ever conspired with any client to receive

pornography. A computer is merely a tool of his trade, and having Internet access is

indispensable in today's society, especially for a self-employed businessman, to be able

to communicate with clients, and to have access to information resources, which, in many

cases, are only available online. The petitioner simply cannot work in any of his fields of

expertise [Ex 9] without the use of a computer and access to the Internet.

Confusing "occupation" with a "tool of the trade" or "medium" was the basis for *U.S.*

*v. Cooper, 171 F.3d 582 (8th Cir.1999)* [Appx A, #7]. In sentencing Cooper for

unlawfully transporting explosive materials, the trial court abused its discretion in

imposing a special condition of supervised release prohibiting the defendant from

-6-

employment as a truck driver if it involved his absence from city for more than 24 hours, since the occupational restriction was not reasonably related to the defendant's offense. The court determined that Cooper's use of a truck as the medium to unlawfully transport explosive materials was not reasonably related to his occupation as a truck driver.

"In this case, the occupational restriction bears no relationship to Cooper's offense of unlawfully transporting dangerous explosives to a storage locker many years ago. Compare United States v. Choate, 101 F.3d 562, 566 (8th Cir.1996) (restriction on self-employment upheld because reasonably related to wire fraud offenses). Therefore, this virtually absolute occupational prohibition on out-of-town truck driving was an abuse of the district court's discretion."

Similarly, the petitioner's use of a computer twelve years ago as the medium to transmit pornography is not related to his lawful and legitimate occupation as a computer specialist.

See also U.S. v. Peterson, 248 F.3d 79 (2nd Cir.2000) [Appx A, #5]:

"Here, the special condition of probation imposed by the District Court constituted an occupational restriction. In addition to the broad prohibition on possession or use of computer equipment, the condition prohibits Peterson from using 'commercial computer systems/services' for employment purposes without a probation officer's permission. The categorically banned items include technology that Peterson would likely need to hold any computer-related job ( i.e., 'a modem; Internet account; writable or re-writable CD Rom; tape backup or removable mass storage device; device/appliance that can be used to connect to the Internet; digital camera; [and] CDs (other than original manufacturer's software distribution)'). Ante at 81-82. Peterson has consistently worked in computer-related jobs and, beginning in May 1997, operated his own computer business. Nothing in the record suggests that the Internet and computer restrictions are 'reasonably necessary,' U.S.S.G. § 5F1.5(a)(2) [Appx B, #5], to protect the public or to deter Peterson from continuing to engage in the conduct for which he was convicted, i.e., bank larceny based on payments made with bad checks. See Doe, 79 F.3d at 1322 [Appx A, #8] (holding that the district court erred in imposing an occupational restriction because the record had not established that 'there [was] reason to believe that, without such a restriction, the defendant [would] continue to engage in unlawful conduct similar to that for which he was convicted, and that such a restriction [was], therefore, reasonably necessary to protect the public'). We conclude that the special condition related to Peterson's use of computer equipment was unreasonably broad and categorical. In our view it cannot be sustained in such broad form."

-7-

1    Understandably, the concern of the court is to restrict the petitioner from accessing

2    pornography.  However, pornography is readily available through mediums other than the

3    Internet (mail, magazines, video), yet the court did not restrict the petitioner to the use of

4    the postal system, nor prohibit the possession of magazines or videotapes.   Furthermore,

5    the court has granted the probation office unannounced access to any computer

6    containing a modem.

7    "This is not to gainsay the point of United States v. Sofsky, 287 F.3d 122, 126-27 (2d
     Cir.2002) [Appx A, #10]; United States v. Peterson, 248 F.3d 79, 82-84 (2d Cir.2001)
8    [Appx A, #5]; and United States v. White, 244 F.3d 1199, 1206 (10th Cir.2001)
     [Appx A, #11, that because the Internet is a medium of communication a total
9    restriction rarely could be justified. The Internet is a vast repository, offering books,
     newspapers, magazines, and research tools along with smut. A judge who would not
10   forbid Scott to enter a video rental store (which may have an adult-video section) also
     should not forbid Scott to enter the Internet, even though Disney's web site coexists
11   with others offering filthy pictures or audio files circulated in violation of the
     copyright laws. See A & M Records, Inc. v. Napster, Inc., 239 F.3d 1004 (9th
12   Cir.2001).  A judge who would not forbid a defendant to send or receive postal mail
     or use the telephone should not forbid that person to send or receive email or to order
13   books at Amazon.com.", U.S. v. Scott, 316 F.3d 733 (11th Cir.2003) [Appx A, #9]

14   "[A] total ban on internet access prevents use of email, an increasingly widely used
     form of communication, and other commonplace computer uses such as getting a
15   weather forecast or reading a newspaper online. There is no need to cut off ⋯ access
     to email or benign internet usage when a more focused restriction ⋯ can be enforced
16   by unannounced inspections of material stored on [the defendant's] hard drive or
     removable disks.' United States v. Freeman, 316 F.3d 386, 392, 2003 WL 57329,
17   2003 U.S.App. LEXIS 196 *16-17 (3d Cir.2003) [Appx A, #12].", Id.

18   "The government concedes ... that the outright ban on unapproved Internet access
     cannot stand post- Sofsky.", U.S. v. Cabot, 325 F.3d 384 (2nd Cir.2003) [App A, #16]
19

20   "While parolees typically have fewer constitutional rights than ordinary persons, see
     Morrissey v. Brewer, 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972);
21   United States v. Loy, 237 F.3d 251, 259 (3d Cir.2001) [Appx A, #2], this is the early
     21st century equivalent of forbidding all telephone calls, or all newspapers. Without
22   more evidence in the record that such a drastic measure is appropriate for Holm, it
     cannot stand.", U.S. v. Holm, 326 F.3d 872 (7th Cir.2003) [Appx A, #17]

23

"Just as in Scott, our decision today should not be interpreted as precluding the district court from imposing more narrowly tailored restrictions on Holm's Internet use. The district court has already imposed the condition that Holm be subjected to random searches of his computer and residence-a condition we find entirely reasonable. See Freeman, 316 F.3d at 392 [Appx A, #12]. Also, a variety of filtering software is now available. Scott, 316 F.3d at 735 [Appx A, #9]; White, 244 F.3d at 1206 [Appx A, #11]. That software is becoming ever more effective, and the court here may wish to consider imposing a requirement that any computer Holm is permitted to use must be so equipped. We are confident that the district court can fashion precise restrictions that protect the child-victims used in Internet pornography and at the same time reflect the realities of Holm's rehabilitation prospects.", *Id.*

"Although Mr. Crume has a lengthy history of grievous sexual misconduct, the record is devoid of evidence that he has ever used his computer for anything beyond simply possessing child pornography. We are not convinced that a broad ban from such an important medium of communication, commerce, and information-gathering is necessary given the absence of evidence demonstrating more serious abuses of computers or the Internet. We are confident that the district court can impose a more narrowly-tailored restriction on Mr. Crume's computer use through a prohibition on accessing certain categories of websites and Internet content and can sufficiently ensure his compliance with this condition through some combination of random searches and software that filters objectionable material.", *U.S. v. Crume, 422 F.3d 728 (8th Cir.2005)* [Appx A, #18]

## 2. The probation officer lacks the authority to impose an occupational restriction.

The decision of whether the petitioner can or cannot use a computer is an improper delegation of discretion to the probation officer. In *U.S. v. Pruden, 398 F.3d 241 (3rd Cir.2004)* [Appx A, #13], the court determined that if the defendant is required to participate in mental health intervention only if underlined directed to do so by his probation officer, then this special condition constitutes impermissible delegation of judicial authority to the probation officer, but if the district court intends nothing more than to delegate to the probation officer details with respect to the selection and schedule of the program, such delegation is proper:

-9-

1  **technician, advisor, or consultant with or without any monetary gain or other compensation.**

2

3  A similar "standard" condition delegates authority to the probation officer to notify

4  "third parties" of the petitioner's criminal record, personal history, or personal

5  characteristics:

6  **13) [A]s directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal**

7  **history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendants compliance with such notification**

8  **requirement.**

9  Regarding special condition #8, the probation officer has expanded the definition of

10  "employer" to include the petitioner's clients, requiring disclosure to <u>everyone</u>, even if

11  the petitioner does not use a computer at all in the course of the services he is providing.

12  Several appellate courts, including the Ninth circuit, have ruled that not only are

13  "clients" not "employers", but that the requirement overall constitutes an occupational

14  restriction that has nothing but a punitive effect on a probationer's ability to earn a living.

15  In *U.S. v. Britt, 332 F.3d 1229 (9th Cir.2003)* [Appx A, #6], the court ruled that the

16  special condition of supervised release, which required the defendant to report his

17  convictions to his clients while engaged in a profession involving collection of personal

18  financial information, was an occupational restriction within meaning of the Sentencing

19  Guidelines, as it limited the terms on which the defendant could engage in his occupation

20  as a credit counselor, and thus was proper only if reasonably related to his offense of

21  conviction, a drug crime.  It further ruled that the special condition, which required the

22  defendant to provide the probation officer with authorization to obtain a record of his

23  phone calls, was imposed to enforce an occupation restriction requiring defendant to

- 11 -

"Here, the District Court thus gave Pruden's probation officer the authority to decide whether or not Pruden will have to participate in a mental health treatment program. As this was an impermissible delegation of judicial authority, this aspect of the sentence was error."

See also *U.S. v. Dempsey, 180 F.3d 1325 (11th Cir.1999)* [Appx A, #14]:

"A probation officer lacks the authority to impose an occupational restriction as a condition of supervised release. Our conclusion in that regard is compelled by the fact that 18 U.S.C. § 3583(d) [Appx B, #2], which authorizes imposition of occupational restrictions as a condition of supervised release, refers exclusively to a court's authority to impose occupational restrictions. See 18 U.S.C. § 3583(d). Likewise, U.S.S.G. § 5F1.5 [Appx B, #5], which implements Congress' mandate in 18 U.S.C. § 3583(d), authorizes only a court to impose occupational restrictions and restricts its authority to do so to those instances where the court specifically finds (1) 'a reasonably direct relationship' between the occupational restriction and the conduct relevant to the defendant's offense and (2) the restriction is 'reasonably necessary to protect the public' from the possibility the defendant will 'continue to engage in unlawful conduct similar to that for which he was convicted.' U.S.S.G. § 5F1.5. Congress probably could have chosen to grant probation officers the discretion to impose occupational restrictions, but it did not."

"Congress did not leave it to probation officers to decide when it is reasonable to impose an occupational restriction.", *Id.*

B.  Telephone records and third-party notification.

In addition to the occupational restriction involving the use of a computer, the court

also imposed the following special conditions:

**7. The defendant shall provide all requested business/personal phone records to the probation officer. The defendant shall disclose to the probation officer any existing contracts with telephone line/cable service providers. The defendant shall provide the probation officer with written authorization to request a record of all outgoing or incoming phone calls from any service provider.**

**8. The defendant shall consent to third party disclosure to any employer or potential employer, concerning any computer-related restrictions that are imposed upon him/her. This includes any activities in which you are acting as a**

**- 10 -**

1     disclose his criminal convictions to clients of his credit counseling business, and thus,

2     was also an occupation restriction, which, under Sentencing Guidelines, had to be related

3     to offense of conviction.

4       Although supervised release conditions can generally be based on a defendant's

5     criminal history, *18 U.S.C. § 3553(a)(1)* [Appx B, #4], § 5F1.5 [Appx B, #5] limits

6     occupational restrictions to those based on the offense of conviction. See *Erwin, 299 F.3d*

7     *at 1232-33* [Appx A, #4] (reversing occupational restriction based on conduct other than

8     that for which the defendant was convicted); *Peterson, 248 F.3d at 85-86* [Appx A, #5]

9     (reversing occupational restriction that required defendant to notify employer of criminal

10    behavior other than offense of conviction).

11      The petitioner suggests that there is no reasonably direct relationship between his

12    occupation as a computer specialist and pornography. The petitioner does not deal in

13    pornography; he does not advocate it, or assist his clients in obtaining it. Moreover, the

14    same occupational restrictions in case 96-CR-5180-OWW also exist in case 99-CR-5342-

15    OWW, even though the offense was falsifying a passport application. Clearly, there is no

16    relationship whatsoever; the special conditions restricting his occupation were imposed

17    solely for his conduct twelve years ago.

18      Quoting *U.S. v. Souser, 405 F.3d 1162 (10th Cir.2005)* [Appx A, #15]:

19    "Pursuant to the plain language of § 5F1.5, an 'occupational restriction' is a condition
of probation that either 'prohibit[s] the defendant from engaging in a specified
20    occupation, business, or profession, or limit[s] the terms on which the defendant may
do so.' U.S.S.G. § 5F1.5(a) [Appx B, #5]. Because an employer notification
21    requirement limits the terms on which a defendant may engage in the specified
occupation, it must be treated as an occupational restriction. See United States v.
22    Peterson, 248 F.3d 79, 85-86 (2d Cir.2001) [Appx A, #5] (treating condition that
required defendant to report conviction to his employer as an occupational
23    restriction); United States v. Britt, 332 F.3d 1229, 1232 (9th Cir.2003) [Appx A, #6]
(treating a condition that required defendant to report his conviction to his clients as

1    officer was adamant that the court's intention was for the petitioner to never be present at

2    Graceada Park for any reason, at any time.  Thus, the petitioner was forced to turn down a

3    desperately needed job.  [Ex 10]

4        The petitioner respectfully asks this court to clarify the meaning of the word "loiter,"

5    and whether or not this will preclude him from accepting sound reinforcement work at

6    venues such as parks, amphitheatres, and fairgrounds, etc.

7

8    D.  Inspection/seizure of computer data.

9

10       Special condition #5 allows the probation officer or a representative to inspect and/or

11   seize the petitioner's computer data:

12       **5. The defendant shall (a) consent to the probation officer and/or probation**
         **service representative conducting periodic unannounced examinations of any**
13       **computer equipment or device that has an internal or external modem which**
         **may include retrieval and copying of all data from the computer or device and**
14       **any internal or external peripherals to ensure compliance with conditions and/or**
         **removal of such equipment for purposes of conducting a more thorough**
15       **inspection; and (b) consent at the direction of the probation officer to having**
         **installed on the computer or device, at defendant's expense, any hardware or**
16       **software systems to monitor the computer or device's use.**

17

18       This condition delegates the authority to the probation officer to conduct periodic

19   unannounced examinations "of any computer equipment or device that has an internal or

20   external modem."  However, the petitioner's computer does not have an internal or

21   external modem, because the probation officer has not granted him permission to have

22   one.  Nonetheless, the probation officer, in cooperation with the Merced Police

23

- **14** -

an occupational restriction); United States v. Doe, 79 F.3d 1309, 1322 (2d Cir.1996)
[Appx A, #8] (same). Because the plain text of § 5F1.5 mandates that Ms. Souser's
notification of her employer should be treated as an 'occupational restriction,' the
District Court erred in imposing this condition of probation without considering
whether the imposition of this restriction comports with § 5F1.5."

C.  Loitering in parks.

The petitioner requests clarification of the following condition:

**4.  The defendant shall have no contact socially with children under the age of
18 unless approved by the probation officer in advance. "No contact" means no
contact in any form either direct or indirect personally, by telephone, letter, or
through another person. The defendant is not to loiter within 100 feet of
schoolyards, child care facilities, parks, playgrounds, arcades, or other places
primarily used by children under the age of 18. This shall include that the
defendant is not to engage in any occupation, either paid or volunteer, which
exposes him directly or indirectly with children under the age of 18.**

Specifically, the condition prohibits the petitioner from loitering within 100 feet of

places primarily used by children.  However, the probation officer has expanded the

definition of the word "loiter" to mean "be present."

It is the petitioner's understanding that to "loiter" means to linger someplace where

one has no business.  For example, a Wal*Mart store may post a "No Loitering" sign,

prohibiting persons from lingering once they have concluded their business with

Wal*Mart.  It certainly doesn't prohibit a person from being in the store to shop.

On April 18, 2007, the petitioner requested, and was denied, permission to set up

sound reinforcement equipment at Graceada Park in Modesto, CA, for "Earth Day".  The

assignment was a contract job by a local sound and lighting company.  The petitioner

explained to the probation officer that this was not loitering.   Nevertheless, the probation

- 13 -

Department, has conducted unannounced examinations and seized the petitioner's data (including backup data) twice since his release in November 2006.

Notwithstanding the constraint that these examinations are limited to a computer with a modem (on-line access), the probation officer has further expanded the meaning of this condition to include not only the data on the computer itself, but also spare parts, hard drives located in inoperable computers, diskettes, external storage devices ("thumb drives"), MP3 (music) players, and the petitioner's electronic Rolodex. [Ex 11]

The first seizure took place on December 19, 2006, and the items seized were returned on December 21st. However, the second time the petitioner's hard drives were seized, on March 21, 2007 (one day before his arraignment), they weren't returned until April 5, 2007, fifteen days later. The effect was catastrophic, barring the petitioner from his legal documents and the ability to work. The petitioner suggests that the probation officer did not have the authority to seize any of his data, considering the plain language of the condition.

Nonetheless, the probation officer has used the opportunity to sift through data that is unrelated to the petitioner's offense: to attempt inspecting legal documents (including confidential attorney-client communications), court documents, confidential client financial information, passwords, and confidential computer account information.

In a telephone call to the petitioner, subsequent to the return of his hard drives, the probation officer indicated that the Merced Police Department officer conducting the "forensic examination" of the data tried to open one of the petitioner's legal documents, but was unable to do so. This revelation has been a cause for concern of both the petitioner and his attorney.

- 15 -

1     Moreover, having discovered the petitioner's client list, the probation officer has

2     contacted his clients, to inquire if he is authorized to possess their data (such as

3     accounting data and computer passwords), and his client's have been understandably

4     upset over the fact that their confidential information is somehow in the hands of the

5     government.   Because of this, the petitioner has already lost one client, who, upon being

6     interrogated by the probation officer, felt that his data was not being properly protected

7     from unauthorized parties.

8     The petitioner usually encrypts or password-protects sensitive client data; however,

9     he has been forced to remove these protections in order to be in compliance with special

10     condition #11:

11     **11. The defendant shall not possess or use any data encryption technique or**
**program of any kind including, but not limited to, software, hardware,**
12     **programming codes, chips, and circuit boards.**

13

14     The petitioner suggests that there be guidelines established to allow the petitioner

15     some way to protect his client's information.   Ostensibly, the court's concern is

16     pornography, which can't be found in the petitioner's client's accounting data, or in

17     privileged communications with his attorney.

18     Additionally, the petitioner requests that any data seized without authority be

19     destroyed, and that both the probation officer and the Merced Police Department provide

20     affidavits to that effect.

21

22

23

- **16** -

E.  Prohibition of audio/visual equipment.

Special condition #14 prohibits the petitioner from using or possessing any photographic equipment.  Specifically,

**14.  The defendant shall not possess photographic equipment, audio/visual equipment or any item capable of producing a visual image without prior approval of the probation officer.**

This condition was never imposed by the court until the most recent judgment, and has been described by the probation officer as "boilerplate" for defendants convicted of sex offenses.

1.  The plain language of the statute does not authorize boilerplate conditions.

The point that any "special" or discretionary condition must be reasonably related, that is, related in tangible way, to crime or to something in defendant's history, has been clearly established by the appellate courts.  If the court did not find it reasonably necessary to impose this condition twelve years ago, the petitioner suggests that there has been no new evidence introduced in the record that makes it reasonably necessary now.  The petitioner has never produced pornography, nor was it ever alleged that he did so.

2.  The condition is an occupational restriction.

The petitioner in the past has worked for local cable television stations as a camera operator and director.  Additionally, the petitioner produces DVD- and Web-based

**-17-**

1     multimedia presentations.  The petitioner has already had to turn down projects where he

2     would need to operate a camera due to this restriction.  Recently, the probationer officer

3     denied the petitioner's request to install a video surveillance system for a client because it

4     would necessitate his use of cameras, even though they would only be in his "possession"

5     long enough to mount on the exterior of a building.

6         Moreover, the decision of whether the petitioner can or cannot use a camera for his

7     legitimate occupation is an improper delegation of discretion to the probation officer.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

1

## SUMMARY

2

3      The court, during the petitioner's sentencing hearing on July 5, 2006 stated, "We have

4      always said you should use a computer because we don't want you to basically be

5      destitute or not be able to make a living." [Ex 12]  Nonetheless, that is precisely what

6      has happened: Rather than assisting the petitioner in remaining gainfully employed in his

7      field and thriving, the probation office has undermined his every effort to do so.  It has

8      been over six months since the petitioner's release, and, even though filtering software is

9      readily available, and it's use has been authorized by the court (and is being used for

10     other probationers), the probation officer has denied his request for Internet access at

11     home.   Incredibly, it has been twelve years since the petitioner's offense, and he still is

12     not permitted to work in his field of expertise.

13     The probation officer has contacted the petitioner's clients, inquired about his "need"

14     for Internet access, then used their uninformed statements to allege that the petitioner is

15     lying, and somehow trying to "get around" his conditions.  [Ex 13] That the petitioner

16     has had to "toe the line" with respect to his computer restrictions isn't surprising, since it

17     has been necessitated by the ambiguous constraints placed by the probation officer on the

18     type of work that he can perform.  [Ex 14] Any momentum gained by the petitioner

19     trying to resurrect his business, and to earn a living commensurate with his expertise has

20     been sabotaged by the probation officer.

21     Now, with the pending hearing for an alleged violation, the probation officer has

22     denied the petitioner permission to perform any service if it requires that he use a

23     computer with access to the Internet, irrespective of whether the work actually requires

- **19** -

1   accessing the Internet. While the court gave discretion to the probation officer to permit

2   the petitioner to work, the condition is now moot, since the petitioner is prohibited from

3   every single resource he needs to do so. The probation officer also has denied all travel

4   outside of the Eastern district, even if it is business-related.

5   Each day, the newspaper lists job opportunities that fall within the petitioner's

6   expertise, from accountant to computer application specialist; yet, while he is applying

7   for them, each require the use of a computer, and he will ultimately be prohibited from

8   accepting any offers. Two agencies only accept résumés via e-mail, a service the

9   petitioner is still barred from using.

10   The petitioner is doing everything he can to eke out a living, working as a handyman

11   or sound engineer to generate a small amount of income; yet the occupational constraints

12   placed on him by the probation officer have made him unemployable in his primary field,

13   and destitute. All of his savings have been exhausted, and presently, he will be unable to

14   meet his financial obligations come June 1, 2007.

15   In addition to the unusual and punitive occupational restrictions, the probation officer

16   continues to interpret the petitioner's special conditions in the most restrictive fashion,

17   irrespective of their plain language, or the seemingly obvious intent of the court. The

18   petitioner is at a complete loss how to survive occupationally and remain in compliance,

19   when, at every turn, the probation officer finds new ways to interpret his conditions and

20   violate him.

21

22

23

- **20** -

1    WHEREFORE, the petitioner respectfully requests that the court,

2    a) Rescind or modify special conditions #3, #7, #8, #14, and standard condition #13, to

3        allow the petitioner the freedom to resume his lawful and legitimate business

4        endeavors commensurate with his level of expertise;

5    b) Clarify special condition #4, defining the meaning of the word "loiter," and whether

6        or not this precludes the petitioner from working as a sound engineer at a park,

7        amphitheater, or fairground;

8    c) Clarify special condition #5, as to whether or not the petitioner's data is subject to

9        seizure from a computer without a modem, and if so, whether the scope includes any

10       and all storage mediums and peripherals, such as spare parts, obsolete hard drives,

11       portable drives, music players, diskettes, and Rolodex devices;

12   d) Recommend ways for the petitioner to protect his confidential client and legal data

13       from unauthorized usage.

14

15

16                                              Respectfully submitted,

17

18

19   Dated:  _May 24, 2007_

20                                              Troy Douglas Brimm, Petitioner

21

22

23

- 21 -

1

## **APPENDIX A — CASES CITED**

2

3     1.  **U.S. v. Allen, 2 F.3d 538 (4th Cir.1993)**

4         Statute governing violation of conditions of supervised release allows court, at any
          point before term of supervised release has expired, to modify conditions of that
5         release. 18 U.S.C.A. § 3583(e), (e)(2).

6     2.  **U.S. v. Loy, 191 F.3d 360 (3rd Cir.1999)**

7         In sentencing defendant for receipt and possession of child pornography, district
          court's failure to explain reasons for imposing certain conditions of supervised
8         release, including alcohol testing and treatment, prohibiting defendant from having
          unsupervised contact with minors, and forbidding him from possessing pornography
9         of any kind, prevented Court of Appeals from reviewing defendant's abuse of
          discretion challenge to these conditions, and required remand to district court to state
10        its reasons for imposing the conditions. 18 U.S.C.A. §§ 2252, 3553, 3563, 3583.

11    3.  **U.S. v. Mills, 959 F.2d 516 (5th Cir.1992)**

12        Requiring defendant convicted of altering odometers to sell car business, as term of
          supervised release, was abuse of discretion given that condition was not minimum
13        reasonably necessary to protect public; banning defendant from personal participation
          in operation of car business was adequate. U.S.S.G. § 5F1.1, comment. (backg'd), 18
14        U.S.C.A.App.; 18 U.S.C.(1982 Ed.Supp.III) § 3742(e)(1)(B).

15    4.  **U.S. v. Erwin, 299 F.3d 1230 (10th Cir.2002)**

16        District court abused its discretion in prohibiting defendant from engaging in
          commercial fishing as condition of supervised release, after officers had found
17        paddlefish roe and ammunition in his truck, government had brought but dropped
          charge of illegally transporting roe, and government had obtained conviction for
18        possessing ammunition with previous felony conviction, inasmuch as record did not
          establish that prohibition was reasonably necessary to protect public from conduct
19        similar to that for which he was convicted. 18 U.S.C.A. § 922(g); U.S.S.G. §
          5F1.5(a), 18 U.S.C.A.
20
          There must be a connection between an occupational restriction imposed as a
21        condition of supervised release and the conduct for which the defendant was
          convicted. U.S.S.G. § 5F1.5(a)(2), 18 U.S.C.A.
22

23

5. **U.S. v. Peterson, 248 F.3d 79 (2nd Cir.2001)**

Sentence for bank larceny conviction which imposed, as a condition of probation, restrictions on computer ownership and Internet access based on defendant's prior state court incest conviction was not "reasonably related" to that conviction, and was not "reasonably necessary" to protect public or defendant's family from future crimes. 18 U.S.C.A. §§ 2113(b), 3551(b)(1), 3553(a), 3563(b); U.S.S.G. § 5B1.3(b), 18 U.S.C.A.

Standard conditions imposed on probation for bank larceny conviction, which specified that defendant had to notify third parties, including potential employers, of risks that may be occasioned by his criminal record were unauthorized by statute, to extent that conditions required notification of defendant's prior incest conviction. 18 U.S.C.A. §§ 2113(b), 3551(b)(1), 3553(a), 3563(b); U.S.S.G. § 5F1.5(a)(1), 18 U.S.C.A.

Standard conditions imposed on probation for bank larceny conviction, which specified that as directed by the probation officer, defendant had to notify third parties, including potential employers, of risks that may be occasioned by his criminal record were improper, to extent that conditions gave discretion to probation officer to determine whether such notification was required. 18 U.S.C.A. §§ 2113(b), 3551(b)(1), 3553(a), 3563(b); U.S.S.G. § 5B1.3(b), 18 U.S.C.A.

6. **U.S. v. Britt, 332 F.3d 1229 (9th Cir.2003)**

Occupational restrictions may be imposed as special conditions of supervised release only if the court determines that the defendant's occupation is related to the offense of conviction. U.S.S.G. § 5F1.5, 18 U.S.C.A.

Special condition of supervised release, which required defendant to report his convictions to his clients while engaged in profession involving collection of personal financial information, was occupational restriction within meaning of Sentencing Guidelines, as it limited the terms on which defendant could engage in his occupation as a credit counselor, and thus was proper only if reasonably related to his offense of conviction, a drug crime. U.S.S.G. § 5F1.5, 18 U.S.C.A.

To extent that special condition of supervised release, which required defendant to provide probation officer with authorization to obtain record of his phone calls, was imposed to enforce occupation restriction requiring defendant to disclose his criminal convictions to clients of his credit counseling business, it was also occupation restriction, which, under Sentencing Guidelines, had to be related to offense of conviction. U.S.S.G. § 5F1.5, 18 U.S.C.A.

Occupational restrictions imposed as special conditions of supervised release, which required defendant to inform clients of his credit counseling business of his past convictions and allow probation officer to examine records of his phone calls, were

- 23 -

not, on record before court, reasonably related to offense of conviction, conspiracy to distribute methamphetamine, or to his violation of supervised release, leaving the county without permission and operating boat while intoxicated, and thus were invalid under Sentencing Guidelines, even though defendant had past conviction for financial crime. U.S.S.G. § 5F1.5, 18 U.S.C.A.

7. **U.S. v. Cooper, 171 F.3d 582 (8th Cir.1999)**

In sentencing defendant for unlawfully transporting explosive materials, trial court abused its discretion in imposing special condition of supervised release prohibiting defendant from employment as truck driver if it involved his absence from city for more than 24 hours, since occupational restriction was not reasonably related to defendant's offense. 18 U.S.C.A. § 3563(b)(5); U.S.S.G. § 5F1.5(a), 18 U.S.C.A.

Special condition of supervised release restricting defendant's employment as over-the-road truck driver was an occupational restriction subject to limitations on imposing such conditions set forth in Sentencing Guidelines, despite government's contention that special condition was simply a geographical limitation that reasonably ensured effective monitoring of defendant by probation office and compliance with special conditions such as random urinalysis and mental health treatment. 18 U.S.C.A. § 3563(b)(5); U.S.S.G. § 5F1.5(a), 18 U.S.C.A.

Government's contention that probation office could not effectively monitor whether defendant was taking his anti-depressant medication and abstaining from drug and alcohol use if he were to disappear from the area for weeks at a time did not justify special condition of supervised release restricting defendant from employment as over-the-road truck driver. 18 U.S.C.A. § 3563(b)(5); U.S.S.G. § 5F1.5(a), 18 U.S.C.A.

8. **U.S. v. Doe, 79 F.3d 1309 (2nd Cir.1996)**

District court's giving advice to probation office regarding imposition of requirement that defendant who pleaded guilty to aiding and abetting preparation and filing of false income tax return had to notify clients of conviction was impermissible delegation of authority to probation office, inasmuch as notification requirement was substantial occupational restriction and decision to impose occupational restriction was entrusted under statute to sentencing court. 18 U.S.C.A. §§ 3562(a), 3601; 26 U.S.C.A. § 7206(2); U.S.S.G. § 5F1.5(a), 18 U.S.C.A.

Court of Appeals carefully scrutinizes unusual and severe conditions of probation, such as one requiring defendant to give up lawful livelihood.

Order requiring defendant who pleaded guilty to aiding and abetting preparation and filing of false income tax return to notify clients of conviction as condition of probation was unsupported by the record, which did not show that notification was reasonably necessary to protect public or was minimum occupational restriction

-24-

required; defendant, who was guilty of single offense and had no Sentencing Guidelines criminal history points, cooperated with government and worked as tax preparer for four years prior to sentencing without complaints or further criminal activity, probation office supervising defendant and United States Attorney's Office found it unlikely that defendant would engage in further criminal activity, and district court made no finding that defendant posed any further risk to public. 18 U.S.C.A. §§ 3551(b)(1), 3553(a), (a)(2)(A-C), 3561-3563; 26 U.S.C.A. § 7206(2); U.S.S.G. §§ 5B1.3(b), 5B1.4(a)(13, 22), p.s., 5F1.5, 18 U.S.C.A.

Elimination of "any possibility" of risk was not proper standard to apply in determining appropriateness of imposing, as condition of probation, requirement that tax preparer who pleaded guilty to aiding and abetting preparation and filing of false income tax return notify clients of conviction. 26 U.S.C.A. § 7206(2).

9. **U.S. v. Scott, 316 F.3d 733 (7th Cir.2003)**

Prohibiting defendant, convicted of fraud, from Internet access without prior approval of probation officer was an unusual condition of supervised release that required advance notice to defendant, from the judge or in presentence report (PSR), of the possibility of such a condition, to allow defendant an opportunity to prepare to meet it and to offer alternatives to flat ban on Internet access. 18 U.S.C.A. § 3583(d)(2); Fed.Rules Cr.Proc.Rule 32(c), 18 U.S.C.A.

10. **U.S. v. Sofsky, 287 F.3d 122 (2nd Cir.2002)**

Condition of supervised release prohibiting defendant, convicted of receiving child pornography, from accessing a computer or the Internet without his probation officer's approval, though reasonably related to the purposes of his sentencing, inflicted a greater deprivation on defendant's liberty than was reasonably necessary, and exceeded the broad discretion of the sentencing judge with respect to conditions of supervised release. 18 U.S.C.A. § 2252A(a)(2)(A).

11. **U.S. v. White, 244 F.3d 1199 (10th Cir.2001)**

Special condition of supervised release, following defendant's second violation of supervised release after conviction for receiving child pornography, that defendant "shall not possess a computer with Internet access throughout his period of supervised release," was at the same time potentially too narrow and overly broad, requiring remand to articulate its contours; if it was intended to prevent using the Internet to order child pornography, it missed the mark, since it did not prevent access to the Internet at another location, and if the district court intended to deny defendant any access whatsoever to the Internet, the special condition overreached and failed to balance the competing interests the sentencing court must consider. 18 U.S.C.A. § 3553(a).

Any condition limiting defendant's use of a computer or access to the Internet, as a condition of supervised release, must reflect the realities of the Internet and difficulties in limiting access, and must permit reasonable monitoring by a probation officer, and the purpose of the special condition must be articulated and enforceable as defined.

## 12. **U.S. v. Freeman, 316 F.3d 386 (3rd Cir.2003)**

District Court was required to state a basis for imposing condition of supervised release prohibiting defendant, convicted of receipt and possession of child pornography, from using or possessing a computer without the permission of his probation officer. 18 U.S.C.A. § 2252(a)(2), (a)(4)(B).

Special condition of supervised release forbidding defendant, convicted of receipt and possession of child pornography, from possessing any computer in his home or using any on-line computer service without the written approval of his probation officer, was overly broad; it involved a greater deprivation of liberty than reasonably necessary to deter future criminal conduct and to protect the public. 18 U.S.C.A. § 2252(a)(2), (a)(4)(B).

## 13. **U.S. v. Pruden, 398 F.3d 241 (3rd Cir.2004)**

District court generally cannot impose condition on supervised release, even one with clearly rehabilitative purpose, without evidence that condition imposed is reasonably related, that is, related in tangible way, to crime or to something in defendant's history. 18 U.S.C.A. § 3553.

To facilitate review, district court should state on record its reasons for imposing any condition on supervised release. 18 U.S.C.A. § 3553.

Condition on supervised release permitting defendant's probation officer to decide whether to require mental health treatment represented improper delegation of judicial authority to probation officer. 18 U.S.C.A. § 3603(10).

If defendant is required to participate in mental health intervention only if directed to do so by his probation officer, then this special condition constitutes impermissible delegation of judicial authority to probation officer, but if district court intends nothing more than to delegate to probation officer details with respect to selection and schedule of program, such delegation is proper. 18 U.S.C.A. § 3603(10).

Plainly erroneous condition of supervised release will inevitably affect substantial rights, as defendant who fails to meet that condition will be subject to further incarceration.

### 14. U.S. v. Dempsey, 180 F.3d 1325, 12 Fla. L. Weekly Fed. C 1048 (11th Cir.1999)

Probation officer lacks the authority to impose an occupational restriction as a condition of supervised release. 18 U.S.C.A. § 3583(d); U.S.S.G. § 5F1.5, 18 U.S.C.A.

Fact that defendant was required to engage in lawful occupation as condition of his supervised release did not permit probation officer to impose occupational restriction as condition of supervised release. 18 U.S.C.A. § 3583(d); U.S.S.G. § 5F1.5, 18 U.S.C.A.

### 15. U.S. v. Souser, 405 F.3d 1162 (10th Cir.2005)

Because condition of probation requiring that defendant notify her employer of her criminal history limited the terms on which defendant could engage in specified occupation, it had to be treated as an occupational restriction, and, thus, district court erroneously imposed it without consideration of whether it comported with sentencing guidelines provision governing occupational restrictions. U.S.S.G. §§ 5B1.3(e)(4), 5F1.5, 18 U.S.C.A.

District court's error in imposing condition of probation requiring that defendant notify her employer of her criminal history without consideration of whether it comported with sentencing guidelines provision governing occupational restrictions was not harmless, where court failed to make requisite findings under provision that condition was reasonably necessary to protect the public, and that it was the minimum necessary to protect the public. Fed.Rules Cr.Proc.Rule 52(a), 18 U.S.C.A.; U.S.S.G. § 5F1.5, 18 U.S.C.A.

District's informal policy of requiring all probationers to notify their employers of their criminal history did not excuse district court's failure to comply with sentencing guidelines provision governing occupation restrictions, because policy conflicted with statute making imposition of occupational restrictions as conditions of probation discretionary and permitting imposition of occupational restrictions only if reasonably necessary for purposes of statute listing factors to be considered in imposing a sentence, and with sentencing guidelines provisions governing occupational restrictions. 18 U.S.C.A. § 3563(b); U.S.S.G. §§ 5B1.3(e), 5F1.5, 18 U.S.C.A.

### 16. U.S. v. Cabot, 325 F.3d 384 (2nd Cir.2003)

Condition of defendant's supervised release prohibiting him from possessing or using any computer or other device with the ability to access the Internet without prior approval of his probation officer inflicted a greater deprivation on defendant's liberty than was reasonably necessary. 18 U.S.C.A. §§ 2251(a, d), 2256(2, 8), 3583(d).

-27-

17. **U.S. v. Holm, 326 F.3d 872 (7th Cir.2003)**

Special conditions of supervised release may be imposed only when reasonably related to factors such as (1) nature and circumstances of offense and history and characteristics of defendant, (2) need to afford adequate deterrence to criminal conduct, (3) need to protect the public from further crimes, and (4) need to provide defendant with training, medical care, or other correctional treatment in the most effective manner; conditions cannot involve a greater deprivation of liberty than reasonably necessary to achieve the latter three goals. 18 U.S.C.A. §§ 3553(a)(1, 2), 3583(d).

In sentencing for possession of child pornography, supervised release condition which banned defendant from access to the internet was greater than necessary to serve goals of supervised release, warranting remand for consideration of a more narrowly tailored and precisely articulated set of rules; defendant had been convicted only of possession of child pornography, had not used computers at his workplace in committing crimes, and was most likely to be able to find employment in the computer field. 18 U.S.C.A. § 2252(a)(4)(B).

18. **U.S. v. Crume, 422 F.3d 728 (8th Cir.2005)**

Condition of supervised release, for defendant's convictions of knowingly receiving child pornography and knowingly possessing child pornography, which completely barred defendant's access to computers and Internet, without first receiving written consent from probation officer, was greater deprivation of defendant's First Amendment rights than was reasonably necessary, where record was devoid of evidence that defendant had ever used computer for anything beyond simply possessing child pornography. U.S.C.A. Const.Amend. 1; 18 U.S.C.A. § 2252A(a)(2).

1

## APPENDIX B — STATUTES CITED

2

3   1. **18 U.S.C. § 3583(e)(2)**

4       (e) Modification of Conditions or Revocation.--The court may, after considering the
5       factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5),
        and (a)(6)—

6       (2) extend a term of supervised release if less than the maximum authorized term was
        previously imposed, and may modify, reduce, or enlarge the conditions of supervised
7       release, at any time prior to  the expiration or termination of the term of supervised
        release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating
8       to the modification of probation and the provisions applicable to the initial setting of
        the terms and conditions of post-release supervision;

9

10  2. **18 U.S.C. § 3583(d)**

11      (d) Conditions of Supervised Release.--The court shall order, as an explicit condition
        of supervised release, that the defendant not commit another Federal, State, or local
12      crime during the term of supervision and that the defendant not unlawfully possess a
        controlled substance. The court shall order as an explicit condition of supervised
13      release for a defendant convicted for the first time of a domestic violence crime as
        defined in section 3561(b) that the defendant attend a public, private, or private
14      nonprofit offender rehabilitation program that has been approved by the court, in
        consultation with a State Coalition Against Domestic Violence or other appropriate
15      experts, if an approved program is readily available within a 50-mile radius of the
        legal residence of the defendant. The court shall order, as an explicit condition of
16      supervised release for a person described in section 4042(c)(4), that the person report
        the address where the person will reside and any subsequent change of residence to
17      the probation officer responsible for supervision, and that the person register in any
        State where the person resides, is employed, carries on a vocation, or is a student (as
18      such terms are defined under section 170101(a)(3) of the Violent Crime Control and
        Law Enforcement Act of 1994). The court shall order, as an explicit condition of
19      supervised release, that the defendant co-operate in the collection of a DNA sample
        from the defendant, if the collection of such a sample is authorized pursuant to
20      section 3 of the DNA Analysis Backlog Elimination Act of 2000. The court shall also
        order, as an explicit condition of supervised release, that the defendant refrain
21      from any unlawful use of a controlled substance and submit to a drug test within 15
        days of release on supervised release and at least 2 periodic drug tests thereafter (as
22      determined by the court) for use of a controlled substance. The condition stated in the
        preceding sentence may be ameliorated or suspended by the court as provided in
23      section 3563(a)(4).\1\ The results of a drug test administered in accordance
        with the preceding subsection shall be subject to confirmation only if the results are

- 29 -

positive, the defendant is subject to possible imprisonment for such failure, and either the defendant denies the accuracy of such test or there is some other reason to question the results of the test. A drug test confirmation shall be a urine drug test confirmed using gas chromatography/mass spectrometry techniques or such test as the Director of the Administrative Office of the United States Courts after consultation with the Secretary of Health and Human Services may determine to be of equivalent accuracy. The court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines from the rule of section 3583(g) when considering any action against a defendant who fails a drug test. The court may order, as a further condition of supervised release, to the extent that such condition--
    (1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);
    (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and
    (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);
any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through (b)(20), and any other condition it considers to be appropriate. If an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation.

3.  **18 U.S.C. § 3563(b)**

(b) Discretionary Conditions.--The court may provide, as further conditions of a sentence of probation, to the extent that such conditions are reasonably related to the factors set forth in section 3553(a)(1) and (a)(2) and to the extent that such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 3553(a)(2) ...

4.  **18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D)**

(a) Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed—
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational

- 30 -

training, medical care, or other correctional treatment in the most effective manner ...

5. **U.S.S.G. §§ 5F1.5**

(a) The court may impose a condition of probation or supervised release prohibiting the defendant from engaging in a specified occupation, business, or profession, or limiting the terms on which the defendant may do so, only if it determines that:
(1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and
(2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.
(b) If the court decides to impose a condition of probation or supervised release restricting a defendant's engagement in a specified occupation, business, or profession, the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public.

- 31 -

1

## **EXHIBITS**

2

3      1.  Special conditions, 96-CR-5180-OWW, January 21, 1997

4      2.  Special conditions, 96-CR-5180-OWW, February 5, 1997

5      3.  Special conditions, 96-CR-5180-OWW, September 27, 1999

6      4.  Special conditions, 99-CR-5342-OWW, February 7, 2000

7      5.  Special conditions, 96-CR-5180-OWW, June 13, 2005

8      6.  Special conditions, 99-CR-5342-OWW, June 13, 2005

9      7.  Special conditions, 96-CR-5180-OWW and 99-CR-5342-OWW, July 25, 2006

10     8.  Invoices to Flying Turtle Cast Concrete, May through October 2005

11     9.  Consulting and Technical Support Services (occupational field)

12     10. Telephone call log re "loitering" in parks

13     11. Seized property receipts

14     12. Page from sentencing hearing, July 5, 2006

15     13. Letter to USPO Sandra Dash re contacting clients, February 12, 2007

16     14. Letter to USPO Sandra Dash re occupational restraints, January 15, 2007

17

18

19

20

21

22

23

Defendant: TROY DOUGLAS BRIMM
Case Number: 1:96CR05180.001

## ADDITIONAL SUPERVISION TERMS

1)   The defendant shall submit to the search of his person, property, home and vehicle by a U. S. Probation Officer, or any other authorized person under the immediate and personal supervision of the probation officer, without a search warrant. Failure to submit to a search may be grounds fro revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to the condition.

2)   The defendant shall participate in a program of mental health counseling, as directed by the probation officer.

3)   The defendant shall have no contact with children under the age of 18 without prior United States probation officer approval. "No contact" means no contact in any form either direct or indirect personally, by telephone, letter or through another person.

4)   the defendant may not frequent places where children congregate, i.e., parks, playgrounds, schools, video arcades etc. without prior United States probation officer approval.

5)   The defendant shall not purchase or possess sexually explicit pictures, magazines, video tapes, or movies without prior United States probation officer approval.

6)   The defendant shall not reside in a residence where minor children also reside without prior United States probation officer approval.

7)   The defendant shall not be within 100 yards or neer the perimeter of any elementary school, junior, or senior high school.



Defendant: TROY DOUGLAS BRIMM
Case Number: 1:96CR05180-001

## ADDITIONAL SUPERVISION TERMS

1) The defendant shall submit to the search of his person, property, home and vehicle by a U. S. Probation Officer, or any other authorized person under the immediate and personal supervision of the probation officer, without a search warrant. Failure to submit to a search may be grounds fro revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to the condition.

2) The defendant shall participate in a program of mental health counseling, as directed by the probation officer.

3) The defendant shall have no contact with children under the age of 18 without prior United States probation officer approval, "No contact" means no contact in any form either direct or indirect personally, by telephone, letter or through another person.

4) The defendant may not frequent places where children congregate, i.e., parks, playgrounds, schools, video arcades, etc., without prior United States probation officer approval.

5) The defendant shall not purchase or possess sexually explicit pictures, magazines, video tapes, or movies without prior United States probation officer approval.

6) The defendant shall not reside in a residence where minor children also reside without prior United States probation officer approval.

7) The defendant shall not be within 100 years or near the perimeter of any elementary school, junior, or senior high school.

8) The defendant shall not use a computer in any way to access sexual implicit material.

9) The defendant shall all the probation officer with access to his computer.

10) The defendant shall limit his computer use to that which is essential to employment. The Court will consider allowing the defendant access to a computer if the defendant can prove to the Court, through, the United States probation officer, that there is some type of blocking services available.



DEFENDANT:      **TROY DOUGLAS BRIMM**

CASE NUMBER:    **1:96CR05180-001**

## SPECIAL CONDITIONS OF SUPERVISION

1.   The defendant shall submit to the search of their person, property, home and vehicle by a U. S. Probation Officer, or any other authorized person under the immediate and personal supervision of the probation officer, without a search warrant. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to the condition.

2.   The defendant shall participate in a program of mental health counseling, as directed by the probation officer.

3.   The defendant shall have no contact with children under the age of 18 without prior United States probation officer approval. "No contact" means no contact in any form either direct or indirect personally, by telephone, letter or through another person.

4.   The defendant may not frequent places where children congregate, i.e., parks, playgrounds, schools, video arcades, etc., without prior United States probation officer approval.

5.   The defendant shall not purchase pr possess sexually explicit pictures, magazines, video tapes, or movies without prior United States probation officer approval.

6.   The defendant shall not reside in a residence where minor children also reside without prior United States probation officer approval.

7.   The defendant shall not be within 100 yards or near the perimeter of any elementary school, junior, or senior high school.

8.   The defendant shall not use a computer in any way to access sexually explicit material.

9.   The defendant shall allow the probation officer access to his computer.

10.   The defendant shall limit his computer use to that which is essential to employment. The Court will consider allowing the defendant access to a computer if the defendant can prove to the Court, through, the United States probation officer, that there is some type of blocking services available.



AO 245B (Rev. 8/96)   Sheet 3 - Supervised Release

| CASE NUMBER: | 1:99CR05342-001 | Judgment - Page 4 of 7 |
|---|---|---|
| DEFENDANT: | TROY DOUGLASS BRIMM | |

# SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall submit to the search of his person, property, home, and vehicle by a United States Probation Officer, or any other authorized person under the immediate and personal supervision of the probation officer, without a search warrant. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

2. As directed by the probation officer, the defendant shall participate in a program of mental health treatment, which may include the taking of prescribed psychotropic medication.

3. As directed by the probation officer, the defendant shall participate in a co-payment plan for treatment or testing and shall make payment directly to the vendor under contract with the United States Probation Office of $5 per month.

4. The defendant may use a computer for employment purposes, however he is not to access any on-line sites which contain pornographic material or any illegal material. Such access may be monitored by the probation officer. Nothing in this order shall be construed as to prohibit the defendant from using a credit card.

5. The defendant shall not possess or use any data encryption technique or program.

6. The defendant shall (i) consent to the probation officer and/or probation service representative conducting periodic unannounced examinations of his computer(s) equipment which may include retrieval and copying of all data from his computer(s) and any internal or external peripherals to ensure compliance with the conditions and/or removal of such equipment for the purpose of conducting a more thorough inspection; and (ii) consent at the direction of the probation officer to having installed on his computer(s), at his expense, any hardware or software systems to monitor his computer use.

7. The defendant shall refrain from accessing via computer any "material" that relates to the activity in which he was engaged in committing the instant offense, namely access to pornography of children or others.

8. The defendant shall provide all business/personal phone records to the probation officer upon request. Further, the defendant shall provide the probation officer written authorization to request a record of all outgoing or incoming phone calls from any service provider.

9. The defendant shall not possess or use a computer that contains an internal modem and/or possess an external modem.

10. The defendant shall consent to third party disclosure to any employer or potential employer, concerning any computer-related restrictions that are imposed upon him.

11. As directed by the probation officer, the defendant shall participate in sex offender counseling.

12. The defendant shall not possess pornographic material or frequent places where pornographic material is the chief item of sale.

**Exhibit 4**

# United States District Court

## Eastern District of California

UNITED STATES OF AMERICA

v.

**TROY DOUGLAS BRIMM**

(Defendant's Name)

### JUDGMENT IN A CRIMINAL CASE

(For Revocation of Probation or Supervised Release)
(For Offenses committed on or after November 1, 1987)

Criminal Number: **1:96CR05180-001**

James Homola

Defendant's Attorney

## THE DEFENDANT:

[✓]  admitted guilt to violation of charge(s) One  as alleged in the violation petition filed on January 11, 2005 .

[ ]  was found in violation of condition(s) of supervision as to charge(s) __ after denial of guilt, as alleged in the violation petition filed on __.

ACCORDINGLY, the court has adjudicated that the defendant is guilty of the following violation(s):

| Violation Number | Nature of Violation | Date Violation Occurred |
|---|---|---|
| One | Failure to Participate in a Program of Mental Health Counseling | 4/5/2004 |

The court: [ ] revokes: [ ] modifies: [✓] continues under same conditions of supervision heretofore ordered on  January 21, 1997 .

The defendant is sentenced as provided in pages 2 through  4  of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[ ]  Charge(s) __ is/are dismissed.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

June 13, 2005

Date of Imposition of Sentence

/s/ OLIVER W. WANGER

Signature of Judicial Officer

OLIVER W. WANGER, United States District Judge

Name & Title of Judicial Officer

June 20, 2005

Date



# United States District Court
## Eastern District of California

UNITED STATES OF AMERICA

v.

**TROY DOUGLAS BRIMM**
(Defendant's Name)

### CORRECTEDJUDGMENT IN A CRIMINAL CASE
(For Revocation of Probation or Supervised Release)
(For Offenses committed on or after November 1, 1987)
Criminal Number: **1:99CR05342-001**

James Homola
Defendant's Attorney

## THE DEFENDANT:

[✔] admitted guilt to violation of charge(s) One as alleged in the violation petition filed on January 10, 2005 .
[ ] was found in violation of condition(s) of supervision as to charge(s) __ after denial of guilt, as alleged in the violation petition filed on __.

ACCORDINGLY, the court has adjudicated that the defendant is guilty of the following violation(s):

| Violation Number | Nature of Violation | Date Violation Occurred |
|---|---|---|
| One | Failure to Participate in Sex Offender Counseling | 4/5/2004 |

The court: [ ] revokes: [ ] modifies: [✔] continues under same conditions of supervision heretofore ordered on February 7, 2000 .

The defendant is sentenced as provided in pages 2 through 4 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[ ] Charge(s) __ is/are dismissed.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

June 13, 2005
Date of Imposition of Sentence

/s/ OLIVER W. WANGER
Signature of Judicial Officer

OLIVER W. WANGER, United States District Judge
Name & Title of Judicial Officer

June 20, 2005
Date


**Exhibit 6**

CASE NUMBER:    1:96CR05180-001                                  Judgment - Page 4 of 5
DEFENDANT:     TROY DOUGLAS BRIMM

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall submit to the search of his person, property, home, and vehicle by a United States Probation Officer, or any other authorized person under the immediate and personal supervision of the probation officer, based upon reasonable suspicion, without a search warrant. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

2. As directed by the probation officer, the defendant shall participate in a co-payment plan for treatment or testing and shall make payment directly to the vendor under contract with the United States Probation Office of up to $25 per month.

3. The defendant shall not possess or use a computer or any other device that has access to any "on-line computer service." This includes any Internet service provider, bulletin board system, or any other public or private computer network, except for use with his employment and after the approval of the probation officer.

4. The defendant shall have no contact socially with children under the age of 18 unless approved by the probation officer in advance. "No contact" means no contact in any form either direct or indirect personally, by telephone, letter, or through another person. The defendant is not to loiter within 100 feet of school yards, child care facilities, parks, playgrounds, arcades, or other places primarily used by children under the age of 18. This shall include that the defendant is not to engage in any occupation, either paid or volunteer, which exposes him directly or indirectly with children under the age of 18.

5. The defendant shall (a) consent to the probation officer and /or probation service representative conducting periodic unannounced examinations of any computer equipment or device that has an internal or external modem which may include retrieval and copying of all data from the computer or device and any internal or external peripherals to ensure compliance with conditions and/or removal of such equipment for purposes of conducting a more thorough inspection; and (b) consent at the direction of the probation officer to having installed on the computer or device, at defendant's expense, any hardware or software systems to monitor the computer or device's use.

6. The defendant shall not possess, own, use, view, read or frequent places with any sexually explicit material in any form that depicts children under the age of 18. Sexually explicit conduct is defined at 18 USC 2246(2)(A)(B)(C)(D) and 18 USC 2256(2) and means actual or simulated (a) sexual intercourse, including genital- genital, oral-genital, or oral-anal, whether between the same or opposite sex; (b) bestiality; c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person under the age of 18.

7. The defendant shall provide all requested business/personal phone records to the probation officer. The defendant shall disclose to the probation officer any existing contracts with telephone line/cable service providers. The defendant shall provide the probation officer with written authorization to request a record of all outgoing or incoming phone calls from any service provider.



8.  The defendant shall consent to third party disclosure to any employer or potential employer, concerning any computer-related restrictions that are imposed upon him/her. This includes any activities in which you are acting as a technician, advisor, or consultant with or without any monetary gain or other compensation.

9.  The defendant shall attend, cooperate with, and actively participate in a sex offender treatment and therapy program (which may include, but is not limited to risk assessment, polygraph examination, computer voice stress analysis (CVSA), penile plethysmograph and/or ABEL assessment) as approved and directed by the probation officer and as recommended by the assigned treatment provider.

10. The defendant shall register and comply with requirements in the state sex offender registration agency in any state where the defendant resides, is employed, carries on a vocation, or is a student.

11. The defendant shall not possess or use any data encryption technique or program of any kind including, but not limited to, software, hardware, programming codes, chips, and circuit boards.

12. The defendant shall not frequent adult bookstores, massage parlors, topless bars, sex shops, or "cruising" areas, nor shall the defendant possess or view any material (i.e., magazines, books, photographs, advertisements) that are sexually explicit.

13. The defendant shall not possess children's clothing, toys, games, stuffed animals or other "lures" including law enforcement identifications, insignias, badges, patches, uniforms, or any other item(s) associated with law enforcement without prior approval of the probation officer.

14. The defendant shall not possess photographic equipment, audio/visual equipment or any item capable of producing a visual image without prior approval of the probation officer.

15. The defendant shall not have access to, control of, or possess a post office box or mail receptacle, storage facility or locker without prior approval of the probation officer.



CASE NUMBER:    1:99CR05342-001
DEFENDANT:      TROY DOUGLAS BRIMM

Judgment - Page 4 of 5

## SPECIAL CONDITIONS OF SUPERVISION

1.  The defendant shall submit to the search of his person, property, home, and vehicle by a United States Probation Officer, or any other authorized person under the immediate and personal supervision of the probation officer, based upon reasonable suspicion, without a search warrant. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

2.  As directed by the probation officer, the defendant shall participate in a co-payment plan for treatment or testing and shall make payment directly to the vendor under contract with the United States Probation Office of up to $25 per month.

3.  The defendant shall not possess or use a computer or any other device that has access to any "on-line computer service." This includes any Internet service provider, bulletin board system, or any other public or private computer network, except for use with his employment and after the approval of the probation officer.

4.  The defendant shall have no contact socially with children under the age of 18 unless approved by the probation officer in advance. "No contact" means no contact in any form either direct or indirect personally, by telephone, letter or through another person. The defendant is not to loiter within 100 feet of school yards, child care facilities, parks, playgrounds, arcades, or other places primarily used by children under the age of 18. This shall include that the defendant is not to engage in any occupation, either paid or volunteer, which exposes him directly or indirectly with children under the age of 18.

5.  The defendant shall (a) consent to the probation officer and /or probation service representative conducting periodic unannounced examinations of any computer equipment or device that has an internal or external modem which may include retrieval and copying of all data from the computer or device and any internal or external peripherals to ensure compliance with conditions and/or removal of such equipment for purposes of conducting a more thorough inspection; and (b) consent at the direction of the probation officer to having installed on the computer or device, at defendant's expense, any hardware or software systems to monitor the computer or device's use.

6.  The defendant shall not possess, own, use, view, read or frequent places with any sexually explicit material in any form that depicts children under the age of 18. Sexually explicit conduct is defined at 18 USC 2246(2)(A)(B)(C)(D) and 18 USC 2256(2) and means actual or simulated (a) sexual intercourse, including genital- genital, oral-genital, or oral-anal, whether between the same or opposite sex; (b) bestiality; c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person under the age of 18.

7.  The defendant shall provide all requested business/personal phone records to the probation officer. The defendant shall disclose to the probation officer any existing contracts with telephone line/cable service providers. The defendant shall provide the probation officer with written authorization to request a record of all outgoing or incoming phone calls from any service provider.

8.  The defendant shall consent to third party disclosure to any employer or potential employer, concerning any computer-related restrictions that are imposed upon him/her. This includes any activities in which you are acting as a technician, advisor, or consultant with or without any monetary gain or other compensation.

9.  The defendant shall attend, cooperate with, and actively participate in a sex offender treatment and therapy program (which may include, but is not limited to risk assessment, polygraph examination, computer voice stress analysis (CVSA), penile plethysmograph and/or ABEL assessment) as approved and directed by the probation officer and as recommended by the assigned treatment provider.

10. The defendant shall register and comply with requirements in the state sex offender registration agency in any state where the defendant resides, is employed, carries on a vocation, or is a student.

11. The defendant shall not possess or use any data encryption technique or program of any kind including, but not limited to, software, hardware, programming codes, chips, and circuit boards.

**Exhibit 7**

CASE NUMBER:    1:99CR05342-001
DEFENDANT:    TROY DOUGLAS BRIMM

Judgment - Page 5 of 5

12.    The defendant shall not frequent adult bookstores, massage parlors, topless bars, sex shops, or "cruising" areas, nor shall the defendant possess or view any material (i.e., magazines, books, photographs, advertisements) that are sexually explicit.

13.    The defendant shall not possess children's clothing, toys, games, stuffed animals or other "lures" including law enforcement identifications, insignias, badges, patches, uniforms, or any other item(s) associated with law enforcement without prior approval of the probation officer.

14.    The defendant shall not possess photographic equipment, audio/visual equipment or any item capable of producing a visual image without prior approval of the probation officer.

15.    The defendant shall not have access to, control of, or possess a post office box or mail receptacle, storage facility or locker without prior approval of the probation officer.



OFFICE OF

# TROY D. BRIMM

2845 E. HATCH RD #90
MODESTO, CA 95351
(209) 538-7089

BUSINESS SERVICES & CONSULTING

# Invoice

Flying Turtle Cast Concrete, Inc.
1314 Coldwell Ave
Modesto, CA 95350

| Date | Invoice No. |
|------|-------------|
| 5/30/2005 | 15 |
| **Terms** | **Date Due** |
| Net 15 | 6/14/2005 |

| Date | Description | Qty/Hours | Rate | Amount |
|------|-------------|-----------|------|--------|
| 5/16/2005 | Meet with Leticia, begin clean-up and upgrade of computer workstation FT01. | 8 | 16.00 | 128.00 |
| 5/17/2005 | | 4 | 16.00 | 64.00 |
| 5/18/2005 | | 5 | 16.00 | 80.00 |
| 5/19/2005 | | 8 | 16.00 | 128.00 |
| 5/20/2005 | | 8.5 | 16.00 | 136.00 |
| 5/23/2005 | | 6.08333 | 16.00 | 97.33 |
| 5/24/2005 | | 8.75 | 16.00 | 140.00 |
| 5/25/2005 | | 9.25 | 16.00 | 148.00 |
| 5/25/2005 | Review MISYS Manufacturing software demo. | 1.33333 | 16.00 | 21.33 |
| 5/26/2005 | | 9.11667 | 16.00 | 145.87 |
| 5/27/2005 | | 3.8 | 16.00 | 60.80 |
| 5/28/2005 | | 7.95 | 16.00 | 127.20 |

*Thank you for your business.*
*Please tell a friend.*

| | |
|---|---|
| **Invoice Total** | $1,276.53 |
| **Payments/Credits** | $-1,276.53 |
| **Balance Due** | $0.00 |

## Exhibit 8

OFFICE OF

# TROY D. BRIMM

2845 E. HATCH RD #90
MODESTO, CA 95351
(209) 538-7089

BUSINESS SERVICES & CONSULTING

# Invoice

Flying Turtle Cast Concrete, Inc.
1314 Coldwell Ave
Modesto, CA 95350

| Date | Invoice No. |
|------|-------------|
| 6/13/2005 | 18 |
| **Terms** | **Date Due** |
| Net 15 | 6/28/2005 |

| Date | Description | Qty/Hours | Rate | Amount |
|------|-------------|-----------|------|--------|
| 5/30/2005 | | 9 | 16.00 | 144.00 |
| 5/31/2005 | | 5.88333 | 16.00 | 94.13 |
| 6/1/2005 | | 7.56667 | 16.00 | 121.07 |
| 6/2/2005 | | 10.5 | 16.00 | 168.00 |
| 6/3/2005 | | 10.5 | 16.00 | 168.00 |
| 6/4/2005 | | 10.5 | 16.00 | 168.00 |
| 6/5/2005 | | 3.5 | 16.00 | 56.00 |
| 6/6/2005 | | 12 | 16.00 | 192.00 |
| 6/7/2005 | | 10.5 | 16.00 | 168.00 |
| 6/8/2005 | | 9 | 16.00 | 144.00 |
| 6/9/2005 | | 9 | 16.00 | 144.00 |
| 6/10/2005 | | 9 | 16.00 | 144.00 |
| | | | | |
| 6/3/2005 | USB Cable | | 28.95 | 28.95 |
| 6/4/2005 | Batteries | | 21.47 | 21.47 |
| 6/12/2005 | Miguel advance | | 211.51 | 211.51 |
| | Total Reimbursable Expenses | | | 261.93 |

*Thank you for your business.*
*Please tell a friend.*

| Invoice Total | $1,973.13 |
|---------------|-----------|
| Payments/Credits | $-1,973.13 |
| Balance Due | $0.00 |

**Exhibit 8**

OFFICE OF
# TROY D. BRIMM

2845 E. HATCH RD #90
MODESTO, CA 95351
(209) 538-7089

**BUSINESS SERVICES & CONSULTING**

# Invoice

Flying Turtle Cast Concrete, Inc.
1314 Coldwell Ave
Modesto, CA 95350

| Date | Invoice No. |
|---|---|
| 6/30/2005 | 19 |
| **Terms** | **Date Due** |
| Net 15 | 7/15/2005 |

| Date | Description | Qty/Hours | Rate | Amount |
|---|---|---|---|---|
| 6/14/2005 | Consulting Fee (Flying Turtle) General consulting, administrative, and technical support services. | 9.25 | 16.00 | 148.00 |
| 6/14/2005 | Consulting Fee (Flying Turtle) Edit inventory item codes and structure. | 1.63333 | 16.00 | 26.13 |
| 6/15/2005 | Consulting Fee (Flying Turtle) | 7.25 | 16.00 | 116.00 |
| 6/16/2005 | Consulting Fee (Flying Turtle) | 9 | 16.00 | 144.00 |
| 6/17/2005 | Consulting Fee (Flying Turtle) | 9 | 16.00 | 144.00 |
| 6/19/2005 | Consulting Fee (Flying Turtle) | 1.5 | 16.00 | 24.00 |
| 6/20/2005 | Consulting Fee (Flying Turtle) | 8 | 16.00 | 128.00 |
| 6/21/2005 | Consulting Fee (Flying Turtle) | 8.25 | 16.00 | 132.00 |
| 6/21/2005 | Consulting Fee (Flying Turtle) | 2.5 | 16.00 | 40.00 |
| 6/22/2005 | Consulting Fee (Flying Turtle) | 7.5 | 16.00 | 120.00 |
| 6/23/2005 | Consulting Fee (Flying Turtle) | 7.5 | 16.00 | 120.00 |
| 6/24/2005 | Consulting Fee (Flying Turtle) | 9 | 16.00 | 144.00 |
| 6/27/2005 | Consulting Fee (Flying Turtle) | 10 | 16.00 | 160.00 |
| 6/28/2005 | Consulting Fee (Flying Turtle) | 9 | 16.00 | 144.00 |
| 6/29/2005 | Consulting Fee (Flying Turtle) | 9 | 16.00 | 144.00 |
| 6/30/2005 | Consulting Fee (Flying Turtle) | 6.5 | 16.00 | 104.00 |

*Thank you for your business.*
*Please tell a friend.*

| | |
|---|---|
| **Invoice Total** | $1,838.13 |
| **Payments/Credits** | $-1,838.13 |
| **Balance Due** | $0.00 |

**Exhibit 8**

OFFICE OF
# TROY D. BRIMM

2845 E. HATCH RD #90
MODESTO, CA 95351
(209) 538-7089

BUSINESS SERVICES & CONSULTING

# Invoice

Flying Turtle Cast Concrete, Inc.
1314 Coldwell Ave
Modesto, CA 95350

| Date | Invoice No. |
|------|-------------|
| 7/16/2005 | 21 |
| **Terms** | **Date Due** |
| Net 15 | 7/31/2005 |

| Date | Description | Qty/Hours | Rate | Amount |
|------|-------------|-----------|------|--------|
| 6/27/2005 | USB Extension Cable | | 26.83 | 26.83 |
| 7/6/2005 | Postage | | 1.06 | 1.06 |
| 7/13/2005 | Postage | | 81.84 | 81.84 |
| 7/15/2005 | Postage | | 3.85 | 3.85 |
| 7/15/2005 | Postage | | 1.29 | 1.29 |
| 7/15/2005 | Postage | | 0.60 | 0.60 |
| 7/16/2005 | Office Supplies | | 66.15 | 66.15 |
| | Total Reimbursable Expenses | | | 181.62 |
| 7/1/2005 | Consulting Fee (Flying Turtle) | 7 | 16.00 | 112.00 |
| 7/2/2005 | Consulting Fee (Flying Turtle) | 7 | 16.00 | 112.00 |
| 7/3/2005 | Consulting Fee (Flying Turtle) | 6 | 16.00 | 96.00 |
| 7/5/2005 | Consulting Fee (Flying Turtle) | 9 | 16.00 | 144.00 |
| 7/6/2005 | Consulting Fee (Flying Turtle) | 9 | 16.00 | 144.00 |
| 7/7/2005 | Consulting Fee (Flying Turtle) | 12 | 16.00 | 192.00 |
| 7/8/2005 | Consulting Fee (Flying Turtle) | 9 | 16.00 | 144.00 |
| 7/9/2005 | Consulting Fee (Flying Turtle) | 5 | 16.00 | 80.00 |
| 7/12/2005 | Consulting Fee (Flying Turtle) | 9 | 16.00 | 144.00 |
| 7/13/2005 | Consulting Fee (Flying Turtle) | 8 | 16.00 | 128.00 |
| 7/14/2005 | Consulting Fee (Flying Turtle) | 10 | 16.00 | 160.00 |
| 7/15/2005 | Consulting Fee (Flying Turtle) | 8.5 | 16.00 | 136.00 |

*Thank you for your business.*
*Please tell a friend.*

| | |
|---|---|
| **Invoice Total** | $1,773.62 |
| **Payments/Credits** | -$1,773.62 |
| **Balance Due** | $0.00 |

# Exhibit 8

OFFICE OF
# TROY D. BRIMM

2845 E. HATCH RD #90
MODESTO, CA 95351
(209) 538-7089

BUSINESS SERVICES & CONSULTING

# Invoice

Flying Turtle Cast Concrete, Inc.
1314 Coldwell Ave
Modesto, CA 95350

| Date | Invoice No. |
|------|-------------|
| 7/31/2005 | 22 |
| **Terms** | **Date Due** |
| Net 15 | 8/15/2005 |

| Date | Description | Qty/Hours | Rate | Amount |
|------|-------------|-----------|------|--------|
| 7/8/2005 | Shipping | | 29.20 | 29.20 |
| 7/11/2005 | Shipping | | 24.63 | 24.63 |
| 7/18/2005 | Deposit | | -53.83 | -53.83 |
| 7/25/2005 | Locks | | 6.44 | 6.44 |
| | Total Reimbursable Expenses | | | 6.44 |
| 7/16/2005 | Consulting Fee (Flying Turtle) | 3.5 | 16.00 | 56.00 |
| 7/17/2005 | Consulting Fee (Flying Turtle) | 5.75 | 16.00 | 92.00 |
| 7/18/2005 | Consulting Fee (Flying Turtle) | 9 | 16.00 | 144.00 |
| 7/19/2005 | Consulting Fee (Flying Turtle) | 9 | 16.00 | 144.00 |
| 7/20/2005 | Consulting Fee (Flying Turtle) | 6.5 | 16.00 | 104.00 |
| 7/21/2005 | Consulting Fee (Flying Turtle) | 7 | 16.00 | 112.00 |
| 7/22/2005 | Consulting Fee (Flying Turtle) | 8 | 16.00 | 128.00 |
| 7/24/2005 | Consulting Fee (Flying Turtle) | 5.5 | 16.00 | 88.00 |
| 7/25/2005 | Consulting Fee (Flying Turtle) | 7 | 16.00 | 112.00 |
| 7/26/2005 | Consulting Fee (Flying Turtle) | 9 | 16.00 | 144.00 |
| 7/27/2005 | Consulting Fee (Flying Turtle) | 7 | 16.00 | 112.00 |
| 7/28/2005 | Consulting Fee (Flying Turtle) | 8.5 | 16.00 | 136.00 |
| 7/29/2005 | Consulting Fee (Flying Turtle) | 11 | 16.00 | 176.00 |
| 7/30/2005 | Consulting Fee (Flying Turtle) | 6 | 16.00 | 96.00 |
| 7/31/2005 | Consulting Fee (Flying Turtle) | 5 | 16.00 | 80.00 |
| 7/31/2005 | Consulting Fee (Flying Turtle) | 3 | 16.00 | 48.00 |

*Thank you for your business.*
*Please tell a friend.*

| | |
|---|---|
| **Invoice Total** | $1,778.44 |
| **Payments/Credits** | $-1,778.44 |
| **Balance Due** | $0.00 |

# Exhibit 8

OFFICE OF
# TROY D. BRIMM

2845 E. HATCH RD #90
MODESTO, CA 95351
(209) 538-7089

BUSINESS SERVICES & CONSULTING

# Invoice

Flying Turtle Cast Concrete, Inc.
1314 Coldwell Ave
Modesto, CA 95350

| Date | Invoice No. |
|------|-------------|
| 10/5/2005 | 25 |
| **Terms** | **Date Due** |
| Net 15 | 10/20/2005 |

| Date | Description | Qty/Hours | Rate | Amount |
|------|-------------|-----------|------|--------|
| 7/27/2005 | Postage | | 1.06 | 1.06 |
| 8/8/2005 | Postage | | 1.52 | 1.52 |
| 8/10/2005 | Batteries/Ice | | 10.61 | 10.61 |
| 8/11/2005 | Office | | 14.99 | 14.99 |
| 8/11/2005 | Postage | | 14.32 | 14.32 |
| 8/12/2005 | Postage | | 0.83 | 0.83 |
| 8/16/2005 | Shop Supplies | | 32.73 | 32.73 |
| | Total Reimbursable Expenses | | | 76.06 |
| 8/1/2005 | Consulting Fee (Flying Turtle) | 3 | 16.00 | 48.00 |
| 8/1/2005 | Consulting Fee (Flying Turtle) | 7.5 | 16.00 | 120.00 |
| 8/2/2005 | Consulting Fee (Flying Turtle) | 8.5 | 16.00 | 136.00 |
| 8/2/2005 | Consulting Fee (Flying Turtle) | 2.5 | 16.00 | 40.00 |
| 8/3/2005 | Consulting Fee (Flying Turtle) | 8 | 16.00 | 128.00 |
| 8/4/2005 | Consulting Fee (Flying Turtle) | 8 | 16.00 | 128.00 |
| 8/5/2005 | Consulting Fee (Flying Turtle) | 8 | 16.00 | 128.00 |
| 8/6/2005 | Consulting Fee (Flying Turtle) | 8 | 16.00 | 128.00 |
| 8/13/2005 | Consulting Fee (Flying Turtle) (Week of 08/08/05-08/13/05) | 48 | 16.00 | 768.00 |
| 8/15/2005 | Consulting Fee (Flying Turtle) (Week of 08/15/05-08/19/05) | 40 | 16.00 | 640.00 |

*Thank you for your business.*
*Please tell a friend.*

| | |
|---|---|
| **Invoice Total** | $2,340.06 |
| **Payments/Credits** | $-2,340.06 |
| **Balance Due** | $0.00 |

# Exhibit 8



**Troy Brimm**                    **Consulting & Technical Support Services**

*"Providing comprehensive consulting and technical support services since 1979."*

## ☑ CONSULTING SERVICES — *$60.00 per hour*

**Planning** — Designing and budgeting your master technology plan including routine support, maintenance and obsolescence. Choosing technologies, products and software that are reliable and offer the best cost-to-performance ratio. Selecting equipment that is modular in design and usable in other configurations to avoid "lateral" equipment purchases.

**Software Resources** — Researching and locating application software, updates and drivers for current and obsolete equipment.

**Data Conversion** — Migration of data between dissimilar products. Custom data conversion between file types and media.

**POS/ECR Systems** — Point-Of-Sale and Electronic Cash Register system support and design. Support for remote programming, data polling and data consolidation. Wiring design for multiple terminal environments.

**Telecommunications** — Remote access, remote control, e-mail, paging, messaging, fax-on-demand, voice mail, PABX integration.

**Network/Wiring Design** — Choosing the right network topology and protocol. Choosing the right network software for maximum value and performance. Complete network wiring design services. Integrating dissimilar software in a networked environment.

**Home Automation** — Computer-controlled, wireless remote control of lighting, heating/cooling, appliances and intrusion alarms.

## ☑ TECHNICAL SUPPORT SERVICES — *Available Monday-Friday 10 am. to 6 p.m.*

**Telephone Support** — Provided on a call-back basis. Calls are returned within 4 hours. Technical support is available for all PC-based hardware and software. Troubleshooting difficult problems is a specialty! $1.50 per minute plus applicable long distance.

**Remote Support** — This service allows remote-control your system, providing an immediate solution to problems, upgrades or software installation. A minimum 14.4K bps modem and remote-control software is required. Call for more information about this premium service. $1.50 per minute plus applicable long distance.

**Personal Consultant™ Service** — A monthly subscription that provides a 15-minute call-back response time, plus unlimited Telephone Support. $30.00 per month for one subscriber, plus $10.00 per month for each additional subscriber.

## ☑ PRIORITY TELEPHONE SUPPORT — *24 hours a day, 7 days a week!*

CompDoc® provides nationwide telephone computer assistance to personal and professional PC and Mac users 24 hours a day, 7 days a week. If you are having trouble, call CompDoc® at **1-900-420-0011**. You will be connected directly to an experienced, professional consultant who will help you every step of the way. CompDoc® guarantees prompt, personal attention and complete satisfaction. The cost is $1.99 per minute. My personal extension number is 2850.

## ☑ PAYMENT POLICIES

Consulting Services are payable in advance by retainer on a per-project basis. Company check, VISA and Mastercard are accepted for payment. Consulting Services are billed in 15 minute increments with a 1 hour minimum. Technical Support Services are payable by VISA or MasterCard and you must have a Credit Card Authorization on file. Priority Telephone Support charges will appear on your phone bill. All services are fully guaranteed. Initial consultation is always free. Mahalo!

843 Wainee St Ste 640 • Lahaina HI 96761 • Voice/Fax: (808) 661-1223 • Toll Free: (800) 880-5089 • tbrimm@ginet.com

**Exhibit 9**

## Unknown

| | |
|---|---|
| **Subject:** | Dash |
| **Entry Type:** | Phone call |
| **Start:** | Fri 4/20/2007 9:40 AM |
| **End:** | Fri 4/20/2007 9:41 AM |
| **Duration:** | 1 minute |
| **Categories:** | Legal |

Dash denied permission to set-up sound equipment for "Earth Day" event at the Mancini Bowl because the venue is located at Graceada Park. I argued that the condition stipulates that I may not "loiter", and that working is not "loitering." She disagreed, and said that if I went to the park to work, she would violate me. I acquiesed.



## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

### INVENTORY OF PROPERTY SEIZED
### BY UNITED STATES PROBATION OFFICER

| Property held against: Troy D. Brimm | | |
|---|---|---|

| Docket Number: 1:96CR05180-01 | Date: 12/19/2006 | Property inventoried by: Sandra Dush, USPO |
|---|---|---|

| Page ___ of ___ pages | Inventory/receipt submitted to: Troy Brimm |
|---|---|

| Item No. | Quantity | Description of Property |
|---|---|---|
| 1 | 1 | Creative Zen - (mp3 Player) |
| 2 | 1 | Memorex 512 mb Thumb Drive |
| 3 | 1 | Blue Computer Tower (Harddrive) |
| 4 | 1 | Separate Hard Drive |
| | | |
| | | |

### CHAIN OF CUSTODY

| Item No. | Released by: | Date: | Purpose: | Received by: |
|---|---|---|---|---|
| 1 | Sandra Dush | 12/21/2006 | Released back to Troy Brimm | Troy B |
| 2 | Sandra Dush | 12/21/2006 | Released back to Troy Brimm | Troy B |
| 3 | Sandra Dush | 12/21/2006 | Released back to Troy Brimm | Troy B |
| 4 | Sandra Dush | 12/21/2006 | Released back to Troy Brimm | Troy B |
| | | | | |
| X | Sandra Dush | | X | 12/21/06 |
| Date | 12/21/06 | | Date | |

X _____ Troy Brimm _____ Date 12/19/06
Date (print)

X _____ Sandra Dush _____ 12/19/2006

Original:    remains with evidence
Copy 1:      to case file
Copy 2:      to Probationer as receipt

**Exhibit 11**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

**INVENTORY OF PROPERTY SEIZED**
**BY UNITED STATES PROBATION OFFICER**

| | | |
|---|---|---|
| **Property held against:** Troy Douglas Brimm | | |

| **Docket Number:** 1:96CR05180-01 1:99CR05342-01 | **Date:** March 23, 2007 | **Property inventoried by:** Sandra K. Dash, United States Probation Officer |
|---|---|---|
| **Page 1 of 1 pages** | | **Inventory/receipt submitted to:** Troy Douglas Brimm |

| Item No. | Quantity | Description of Property |
|---|---|---|
| 1 A | 1 | Maxtor Hard drive Model # 7850AU |
| 2 B | 1 | Maxtor Hard drive Model # 71626AP |
| 3 C | 1 | Quantum Fireball Hard drive 35 Series |
| | | |
| | | |
| | | |

**CHAIN OF CUSTODY**

| Item No. | Released by: | Date: | Purpose: (Hard drive) | Received by: |
|---|---|---|---|---|
| 1 A | Sandra Dash USPO | 3/26/07 | Computer Forensic Exam by expert | Det Joe Weiss |
| 2 B | Sandra Dash USPO | 3/26/07 | " " | " " |
| 3 C | Sandra Dash USPO | 3/26/07 | " " | " " |
| 1 A | J. Weiss | 4/4/07 | Return to T.Brimm | Sandra Dash 4 |
| 2 B | J. Weiss | | " " | Sandra Dash 4 |
| 3 C | J. Weiss | | " " | Sandra Dash |

SKD

| Original: | remains with evidence |
|---|---|
| Copy 1: | to case file |
| Copy 2: | to Probationer as receipt |

*Received items 1A, 2B, 3C*
*Troy Brm 4/5/07*

*Sandra Dash USPO 4/5/07*

Rev. 05/2006
SEARCH – INVENTORY FORM.WPG

**Exhibit 11**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

## INVENTORY OF PROPERTY SEIZED
## BY UNITED STATES PROBATION OFFICER

**Property held against:** Troy Douglas Brimm

| Docket Number: 1:99CR05342-01 1:96CR05180-01 | Date: 03/21/2007 | Property inventoried by: Sandra K. Dash, United States Probation Officer |
|---|---|---|
| Page 1 of 1 pages | | Inventory/receipt submitted to: Troy D. Brimm |

| Item No. | Quantity | Description of Property |
|---|---|---|
| 1 | 1 | MaxTor Hard Drive Serial # E1E2QTGE |
| 2 | 1 | MaxTor Hard Drive Serial # Y2KMVKR: |
| 3 | 1 | Memorex USB Hard Drive. |
| 4 | 1 | Rolodex (REX) Electronics |
| | | |
| | | |

## CHAIN OF CUSTODY

| Item No. | Released by: | Date: | Purpose: (Hard drive) | Received by: |
|---|---|---|---|---|
| 1 | Sandra Dash USPO | 3/26/07 | Computer Forensic Exam by Expert | Det Joe Weiss M |
| 2 | " " | " | " " | " " |
| 3 | " " | " | " " | " " |
| 4 | " " | " | " " | " " |
| 1 | J. WEISS | 4-4-07 | To be returned to T. Brimm | Sandra Dash 4-4-07 |
| 2 | J. WEISS | | " " | Sandra Dash 4-4-07 |
| 3 | J. WEISS | | To be returned | Sandra Dash 4-4-07 |
| 4 | J. WEISS | | to T. Brimm | Sandra Dash 4-4-07 |

SKD

| | |
|---|---|
| Original: | remains with evidence |
| Copy 1: | to case file |
| Copy 2: | to Probationer as receipt |

Received items 1-4   4/5/07

Troy Bri

Sandra Dash USPO

Rev. 05/2006

SEARCH - INVENTORY FORM.MRG

**Exhibit 11**

1   my clients.  It was my impression that I was allowed to do so.
2   However, there was always -- Mr. Hendley was always, he would
3   prefer that I just simply never touched one, but
4   unfortunately, I had to try to make a living.

5          So the ambiguities have now been corrected.  At this
6   point --

7          THE COURT:  Well, the concern is this, that no one
8   wants to deny you the opportunity to make a living, because we
9   don't want you to become a charge on society.  However, there
10  is a stricture that you simply cannot access sites that have
11  inappropriate material on them, and that is what is important.

12         And Mr. Hendley's mission is he has to know about
13  your computer usage to make sure that that isn't happening.
14  And what happened is when he did check, when they had a
15  forensic check of what sites your computer had visited, there
16  were some of the prohibited sites.  That's the problem, not
17  that you use a computer.

18         We have always said you should use a computer because
19  we don't want you to basically be destitute or not be able to
20  make a living.

21         THE DEFENDANT:  I understand.  There is no -- I can
22  make no excuse for having accessed that site.  I can't.

23         THE COURT:  Well, what is it going to take to get you
24  to the point where you actually act, then, upon the Court's
25  order and that belief that you can't do it?

**Exhibit 12**

From the desk of

# Troy D. Brimm

February 12, 2007

U.S. Probation Office
Attn: Sandra Dash
via Facsimile: (209) 574-0953

Sandy:

Thank you for advising me regarding the new conditions at Parks & Scheder; however, I would like to take this opportunity to express some concern over the nature of the communications that have been occurring in the past with respect to my need for Internet access.

I am uncomfortable being routinely placed in a position to defend the necessity of Internet access based on my clients' ignorance about the work needed to serve their needs. In the course of one week, we have had several conversations that sound something like this, "You say you need Internet access, yet your client says you don't." These misunderstandings wouldn't normally be a problem, since it would be customary to defer to the expert when there was a conflict of opinion.

In my case, however, I am not regarded as an expert, but rather as a probationer, and I am forced to defend my expertise when it is in conflict with the opinion of my clients.

I would just like to point out that, regarding the necessity of Internet access when servicing a client or fulfilling a responsibility to my employer, I am the only one who is cognizant of the need for Internet access. I will continue to explain to you in detail the technical aspects of my work so that you can make informed decisions, mindful of the Court's request that I stay gainfully employed in my field.   In return, I would ask that you defer to my expertise, and not my clients' opinions.  This will prevent any future misunderstandings.

Respectfully,

Troy Brimm

cc: File

**Exhibit 13**



*From the desk of* Troy Brimm

Tel/Fax (209) 576-0448

| | | | |
|---|---|---|---|
| **To:** Sandra Dash | | **Company:** U.S. Probation Office |
| **Fax:** (209) 574-0953 | | **Pages:** 3 |
| **Phone:** (209) 549-2817 | | **Date:** January 15, 2007 |
| **Re:** Internet service/Counseling | | **CC:** |

☐ **Urgent**   ☑ **For Review**   ☐ **Please Comment**   ☑ **Please Reply**   ☐ **Please Recycle**

**Comments:**

Sandy:

I continue to receive calls from clients (and potential ones) requesting that I schedule computer work for them. However, without more specific information from you about what my limitations will be, I am unable to commit to the nature and scope of the services I can provide, and when I will be allowed to provide them.

I would appreciate having a clear plan of action so that I can schedule future projects. My clients are a patient group; however, they deserve to know when (or if) I can begin the work they have been waiting for.

Regarding Columbine Counseling Center in Twain Harte, I've thought about the distance, and would prefer staying a bit closer to home. Besides, I still owe them for services rendered years ago, and it would be improper to request additional service with an account still in arrears.

I'll be happy to start the Stockton program; however, I must insist that I be allowed to tape record my sessions. It is my right to do so (see attached California Board of Psychology "Patient Bill of Rights"), but Dr. Randazzo has already refused my request to do so. His unwillingness to follow state licensing guidelines already is a red flag for me, and, based on my past experiences with bad therapists, I must protect myself from any "misunderstandings" regarding my "participation" in therapy.

I look forward to hearing from you at your earliest convenience.

Troy Brimm

**Exhibit 14**

1       IN THE UNITED STATES DISTRICT COURT FOR

2       THE EASTERN DISTRICT OF CALIFORNIA

3

4       UNITED STATES OF AMERICA,

5                   Respondent,                    Case Nos.  CR-96-5180-OWW
                                                              CR-99-5342-OWW
6            vs.

7       TROY DOUGLAS BRIMM,                        PROOF OF SERVICE
                                                   BY MAIL
8                   Petitioner.

9

10

11          I hereby certify that on _____May 24, 2007_____, I served a copy of the attached
        MOTION TO CLARIFY, MODIFY, OR RESCIND SPECIAL CONDITIONS OF
12      SUPERVISED RELEASE by placing a copy in a postage paid envelope addressed to the
        person(s) hereinafter listed, by depositing said envelope in the United States Mail at
13      Modesto, California.

14
        Office of the U.S. Attorney              U.S. Probation Office
15      AUSA Sherrill Carvalho                   USPO Sandra Dash
        2500 Tulare St, Rm 4-401                 1700 Standiford Ave, Ste 220
16      Fresno CA 93721                          Modesto, CA 95350

17      Daniel L. Harralson, Attorney at Law
        PO Box 26688
18      Fresno, CA 93729-6688

19

20          I declare under penalty of perjury that the foregoing is true and correct.

21

22
        Dated: _May 24, 2007_                    _____
23                                               Troy Douglas Brimm, Petitioner

        - 33 -